2004 VT 61

**Katherine LAWSON and Bradley Lawson v. BROWN'S HOME DAY CARE CENTER, INC. and Lucille Nelson and Robert Nelson, Jr. (Duncan F. Kilmartin, Appellant)**

[861 A.2d 1048]

No. 03-112

¶ 1. July 8, 2004. Duncan Kilmartin appeals from the trial court's order, on remand, upholding its imposition of $2000 in sanctions. The court found that Kilmartin acted in bad faith in filing unsealed materials from a confidential me-

diation session with the court. Kilmartin argues that the court's order should be reversed because: (1) he was deprived of his due process right to advance notice that his conduct was proscribed; (2) due process required proof of his misconduct beyond a reasonable doubt; (3) the trial court erred in finding that he acted in bad faith; and (4) the court lacked jurisdiction to sanction him after August 10, 1998 when the underlying case was dismissed.

¶ 2. As discussed below, we find these arguments without merit. The trial court was ordered on remand to determine Kilmartin's motivation in disclosing confidential materials. See *Lawson v. Brown's Day Care Ctr., Inc.*, 172 Vt. 574, 574, 776 A.2d 390, 391 (2001) (mem.) ("We reverse and remand for a determination on the issue of Kilmartin's motivation in making the disclosure."). We explained that if the court found that Kilmartin had revealed the mediation materials in bad faith, "then a sanction would be an appropriate exercise of the court's inherent powers." *Id.* at 578, 776 A.2d at 395. The court's finding that Kilmartin acted in bad faith is supported by the record, and the court did not abuse its discretion in imposing sanctions. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) (court's exercise of its inherent powers reviewed for abuse of discretion). We therefore affirm.

¶ 3. The facts underlying this appeal are largely set forth in our entry order reversing and remanding this case to the trial court. See *Lawson*, 172 Vt. at 574-76, 776 A.2d at 390-93. Briefly restated, Kilmartin was counsel for defendants in an underlying civil action. Significant animosity developed between Kilmartin and plaintiffs' counsel, Gareth Caldbeck, which manifested itself in numerous filings with the trial court. Despite being ordered to refrain from personally attacking one another, their behavior continued. See *id.* at 574, 776 A.2d at 391. On June 18, 1998, Kilmartin filed an "emergency" motion to disqualify Caldbeck, accusing him of obstruction of justice, subornation of perjury, and presentation of false evidence. See *id.* The motion was denied.

¶ 4. On June 22, 1998, the parties began court-ordered mediation, agreeing that all proceedings would remain confidential. Shortly thereafter, Kilmartin filed unsealed documents with the court accusing Caldbeck of unethical and illegal conduct. These filings included a copy of a proposed settlement agreement, and they disclosed discussions that had occurred during mediation. Caldbeck similarly filed material from the mediation session with the court. The court ordered the temporary seal of certain pages of these documents to protect the confidentiality of the parties' mediation and settlement discussions.

¶ 5. On August 10, 1998, the underlying case was dismissed with prejudice based on the parties' stipulation. On August 21, the court issued a show cause order, asking Kilmartin and Caldbeck to demonstrate why sanctions should not be imposed for their violation of the confidentiality of the mediation session. After a hearing, the court imposed sanctions against both attorneys pursuant to its inherent powers.

¶ 6. Kilmartin appealed, arguing that he had been denied procedural due process, and that his professional responsibilities required him to make the disclosure that was the subject of sanctions.* See *id.* at 574, 776 A.2d at 390. We reversed and remanded, holding that the trial court lacked the authority to sanction Kilmartin through its inherent powers absent a finding of bad faith or other exceptional circumstances. *Id.* at 576, 776 A.2d at 393. We thus remanded

---

* Attorney Caldbeck did not appeal from the court's order imposing sanctions.

for a determination of Kilmartin's motivation in making the disclosure. As we explained, Kilmartin was entitled to "some explanation why the reasons [he offered] for the disclosure were not only wrong, but so wrong that they were advanced in bad faith." *Id.* We recognized that the court's imposition of sanctions raised due process concerns, but we concluded that these concerns would be addressed by a finding of bad faith. *Id.* at 577-78, 776 A.2d at 394 (explaining that "attorneys in this state are on notice that negotiating in bad faith during settlement negotiations can result in sanctions.").

¶ 7. On remand, and after a hearing, the trial court issued a lengthy order upholding its imposition of sanctions after finding that Kilmartin acted in bad faith. In reaching its conclusion, the court considered Kilmartin's justification for his behavior, i.e., "to disclose unethical conduct and/or potentially criminal conduct and to disqualify the opposing lawyer," in light of all the facts and circumstances. The court found Kilmartin's explanation inconsistent with his conduct, and, based on numerous findings, it concluded that Kilmartin had acted in bad faith in filing confidential materials with the court.

¶ 8. To place Kilmartin's behavior in context, the court first recounted in detail the "unnecessary, unprofessional, and distracting" behavior exhibited by counsel in the underlying proceedings. The court turned next to the specific acts that formed the basis of its sanction order: Kilmartin's repeated filing of documents protected by the confidentiality of the mediation process. As the court explained, on July 2, 1998, Kilmartin filed a complicated motion seeking permission to appeal the court's denial of his emergency motion to disqualify Caldbeck, or alternatively, to suspend and disqualify Caldbeck. In his motion, Kilmartin accused Caldbeck of misconduct in preparation of the settlement agreement, and

he repeated his earlier charge that Caldbeck had prepared false affidavits. Kilmartin described specific discussions that took place during the June 22 mediation session, and attached a draft settlement agreement as an exhibit. Kilmartin did not request that any portion of the motion be sealed, and it became a matter of public record upon filing, even though the settlement process was ongoing. Kilmartin filed two additional motions that included discussions of events that had occurred during mediation, as well as an affidavit from a mediation participant.

¶ 9. The court compared this behavior with the justification proffered by Kilmartin, and found that, although his claimed purposes appeared facially valid, they did not justify his actions. The court explained that if Kilmartin's purpose was to disclose unethical conduct, the filing of confidential material from the mediation session with the trial court three times between July 2 and July 10 in the context of the filing of civil motions was not the way to do it. Similarly, the court found that if Kilmartin's purpose was to disclose potentially criminal conduct, the filing of the confidential material in motions with the trial court was ineffectual. If his intent was to disqualify Caldbeck, the court found no reason why this required him to place confidential mediation information into the public record when reasonable alternatives existed. Moreover, the court found that this asserted purpose did not justify the filing of confidential material not only once, but repeatedly, including after the court had ordered that it would temporarily seal such material. Thus, because Kilmartin's stated objectives were inconsistent with his conduct, the court found that this raised serious questions about his motivation.

¶ 10. The court placed significant importance on the context in which the filings had occurred. As the court found, at the time of Kilmartin's actions: there

was a high degree of animosity between the parties; Kilmartin had engaged in a pattern of "baiting" Caldbeck; Kilmartin had been sanctioned twice for discovery violations that involved wilful, knowing refusals to provide information to Caldbeck; Kilmartin had already tried twice unsuccessfully to disqualify Caldbeck, and his behavior occurred in the context of a third attempt; Kilmartin acted swiftly to seek Caldbeck's disqualification without the support of defendants' other attorneys at a time when the case was already substantially settled; the disqualification of Caldbeck would have deprived plaintiffs of the one attorney familiar with their case at a time when they were near settlement, and it would have foiled Caldbeck's attempt to settle the claim in a timely manner; and most importantly, none of Kilmartin's stated purposes were advanced by the public filing of confidential material from the mediation process.

¶ 11. Based on its findings, the court found the presence of five elements that, collectively, compelled a finding of bad faith. These included: (1) the conduct was in violation of a duty to the court; (2) the conduct was not the result of an inadvertent mistake but consisted of conscious acts; (3) the proffered justification, though valid on its face, was not supported by the actual conduct; (4) the conduct was prompted by an improper purpose; and (5) it involved ill will. After analyzing Kilmartin's behavior with respect to each of these factors, the court upheld its imposition of sanctions.

¶ 12. Kilmartin filed several post-judgment motions. In one of these motions, Kilmartin asserted, for the first time, that he was entitled to have proof of his misconduct established beyond a reasonable doubt because the court's sanction was punitive. The court rejected this argument. It explained that at the original sanctions hearing it had made clear that the sanction was compensatory as it was calculated to reimburse the court for the time that it took to respond to Kilmartin's actions. This appeal followed.

¶ 13. We first address Kilmartin's procedural arguments. Kilmartin asserts that the due process standard articulated by this Court in its remand order requires that the "bad faith" nature of his acts be self-evident, both legally and factually. He relies on several contempt cases to support his assertion that the trial court could not impose sanctions against him unless he had clear prior notice that his conduct was proscribed. According to Kilmartin, he was denied due process because at the time he filed confidential materials with the court, it was not apparent to him that he was engaging in potentially sanctionable conduct, nor that he was "negotiating in bad faith." In a related vein, he asserts that he was entitled to enhanced procedural protections, specifically, proof of his misconduct beyond a reasonable doubt, because the court's sanction was punitive. He argues that the evidence is insufficient to satisfy this standard.

¶ 14. The trial court has inherent power to sanction an attorney for misconduct, but it must first find the presence of bad faith or other exceptional circumstances. See *Lawson*, 172 Vt. at 576, 776 A.2d at 393; *In re Sherman Hollow, Inc.*, 160 Vt. 627, 630, 641 A.2d 753, 756-57 (1993) (mem.); *Van Eps v. Johnston*, 150 Vt. 324, 326-27, 553 A.2d 1089, 1091-92 (1988); see also *Chambers*, 501 U.S. at 45-46; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-66 (1980). Before imposing a sanction based on its inherent powers, a court must assure that due process requirements are met, i.e., the party being sanctioned must be provided with fair notice of the charge against him and an opportunity to be heard. *Van Eps*, 150 Vt. at 328, 553 A.2d at 1092. Where sanctions are punitive, rather than compensatory, special ·due

process concerns may arise. See *Lawson*, 172 Vt. at 577, 776 A.2d at 394 (citing *Bigelow v. Bigelow*, 171 Vt. 100, 108-09, 759 A.2d 67, 72-73 (2000)). We recognized in *Bigelow*, 171 Vt. at 108, 759 A.2d at 72-73, that other courts have held that prior to the imposition of certain noncompensatory fines, a party is entitled to "specific notice of the possibility of non-remedial sanctions, the opportunity to respond to such fines, and other procedural safeguards."

¶ 15. We reject Kilmartin's assertion that the court's imposition of sanctions violated his due process rights because he did not have clear notice that his conduct was proscribed. Unlike the cases on which Kilmartin relies in support of this proposition, see, e.g., *Mother African Union First Colored Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church*, 1992 WL 83518, at *9 (Del. Ch. April 22, 1992) (unpublished opinion) ("A cardinal requirement for any adjudication of contempt is that the order allegedly violated give clear notice of the conduct being proscribed."); *Mattingly v. Houston*, 250 A.2d 633, 635 (Md. 1969) ("Before a person may be held in contempt for violation of an order or decree it must be definite, certain and specific in its terms."); *State v. Pownal Tanning Co.*, 142 Vt. 601, 605, 459 A.2d 989, 991 (1983) ("[A]s a general rule before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties imposed upon him."), Kilmartin was not held in contempt for violating the terms of a court order that was unspecific as to what it proscribed. In this case, the court sanctioned Kilmartin for acting in bad faith. Cf. *Chambers*, 501 U.S. at 45-46 (court's inherent ability to award attorney's fees for bad-faith conduct vindicates court authority without resort to the more drastic sanctions available for contempt of court and makes prevailing

party whole for expenses caused by his opponent's obstinacy).

¶ 16. Although we expressed concern in our remand order that Kilmartin may not have had "fair warning of the possible consequences of his actions," we stated that if the trial court found that Kilmartin acted in bad faith in making the disclosures, "there would be no violation of his due process rights because attorneys in this state are on notice that negotiating in bad faith during settlement negotiations can result in sanctions." *Lawson*, 172 Vt. at 577-78, 776 A.2d at 394. The trial court's finding of bad faith thus addresses the due process concerns raised by Kilmartin on appeal. For a similar reason, we find no merit in Kilmartin's assertion that he was entitled to enhanced due process protections because the "law of the case" holds that the sanction imposed by the trial court was punitive. Kilmartin misreads our prior order. Although we suggested that the sanction imposed on Kilmartin was "essentially punitive," we did not hold that, on remand, he was entitled to the full panoply of due process protections associated with a criminal proceeding. In this case, Kilmartin received all of the procedural protections to which he was entitled: notice that sanctions were being considered for his acts of filing confidential materials, and an opportunity to be heard prior to the court's imposition of sanctions. See *Van Eps*, 150 Vt. at 328, 553 A.2d at 1092.

¶ 17. Kilmartin next challenges the substance of the court's finding that he acted in bad faith. He essentially argues that his conduct did not constitute bad faith because: (1) he had valid concerns about Caldbeck's behavior, and the trial court was the proper place to voice them; (2) he was not prohibited from filing his disciplinary complaint with the trial court, and thus, he should not be sanctioned for doing so; (3) the court erred in finding that his purpose in filing the

material was to vex Caldbeck and publicly criticize his alleged misconduct; (4) policy reasons dictate against a finding of bad faith for revealing confidential materials related to attorney misconduct; and (5) there was no existing rule that mediation proceedings must be kept confidential.

¶ 18. We find these arguments unavailing. The trial court was asked to make a factual determination of Kilmartin's motivation in filing confidential materials with the court. See *Lawson*, 172 Vt. at 574, 776 A.2d at 391. Kilmartin essentially asks this Court to reweigh the evidence and reach a conclusion opposite to that reached by the trial court. We will not disturb the trial court's factual findings unless they are clearly erroneous, meaning there is no credible evidence in the record to support them. See V.R.C.P. 52(a)(2); *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994). Kilmartin has not demonstrated that the court's finding of bad faith, and the factual findings that underlie it, are clearly erroneous.

¶ 19. Contrary to Kilmartin's suggestion, the trial court did not sanction him based on the merits of his conclusion that he had a professional obligation to disclose what he perceived to be professional misconduct, nor did it sanction him simply because he filed his disciplinary complaint in the wrong place. Instead, the court evaluated Kilmartin's behavior in light of all the facts and circumstances and found that his actions had been taken in bad faith. While Kilmartin asserts that he engaged in an objectively reasonable course of action, the court found otherwise; it was unpersuaded by the explanation that Kilmartin offered for his behavior. The court's bad faith finding does not rest, as Kilmartin argues, on his decision "to bring his problems with the settlement before the court." The court's decision was based on its findings as to Kilmartin's motivation in filing confidential materials with the court. We need not reiterate all of the court's factual findings in this regard here. The court made findings opposite to those urged on us by Kilmartin, and because they are supported by the record, we will not disturb them on appeal. See *Kanaan v. Kanaan*, 163 Vt. 402, 405, 659 A.2d 128, 131 (1995) (trial court's findings entitled to wide deference on review because it is in unique position to assess the credibility of witnesses and weigh the evidence presented).

¶ 20. Kilmartin's final argument, raised for the first time on appeal, is that the trial court lost jurisdiction to sanction him on August 10, 1998 when it dismissed the underlying case. Kilmartin cites no legal authority for this proposition. Instead, he relies on the language of V.R.C.P. 11(c)(2)(B) (monetary sanctions "may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned") and the notes accompanying F.R.C.P. 11. The analogy that Kilmartin attempts to draws is inapt. First, because the court did not impose sanctions under Rule 11, the rule's requirements are irrelevant here. More importantly, Kilmartin has not explained how the dismissal of the underlying case deprived the court of "subject matter jurisdiction" to exercise its inherent power to sanction him. As the United States Court of Appeals for the Ninth Circuit observed:

> Our inherent jurisdiction to condemn and punish the abusive conduct of litigants and their attorneys who appear before us is separate and apart from our jurisdiction to adjudicate the merits of their claims. In the exercise of our inherent jurisdiction we may, of course,

inform ourselves of the nature and extent of apparent misconduct and we may condemn it as abusive. Our condemnation is not the exercise of our jurisdiction over the merits; it is an exercise of our inherent jurisdiction. That some issue may be common to both bases of jurisdiction does not preclude this court from exercising either independently or both simultaneously.

*Trohimovich v. Comm'r of Internal Revenue*, 776 F.2d 873, 875 (9th Cir. 1985), *abrogation on other grounds recognized by Nordvik v. Comm'r Internal Revenue Serv.*, 67 F.3d 1489, 1493 (9th Cir. 1995); see also *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) (court clearly had jurisdiction to impose sanctions, irrespective of status of underlying case, because imposition of sanctions is an issue collateral to and independent from underlying case) (citing cases). Kilmartin's assertion that the court was without jurisdiction to sanction him after August 10, 1998 is without merit.

*Affirmed.*

Motion for reargument denied August 20, 2004.